[1] This is a suit to recover damages for personal injuries against the Terminal Railroad Association of St. Louis, the employer of the plaintiff, and the Railway Express Agency. The defendants are charged with joint negligence and upon trial a verdict for $2,000 was returned against both of them. This amount was reduced by remittitur to $1500, for which sum judgment was entered, and both defendants appealed.
[2] The plaintiff is a young man who was working at the time of his injury for the Terminal Railroad Association as a baggage handler at Union Station in St. Louis, Missouri. His work consisted of transporting mail by a hand truck from the post office to the trains through the station subway. The mail came in to the station subway in trucks from the post office and was taken by the plaintiff to the proper train. The subway was below the train tracks and the hand trucks were brought up to the train level by elevators. There were about twenty of these elevators on each side of the subway and the passage upon which they faced was approximately 19 feet in width.
[3] The trucks used were a barrow type with two wheels in the center. They were 16 feet long and 4 1/2 feet wide with a bar handle extending across the ends and with a space of 3 or 4 inches between it and the truck body. The Railway Express Agency had similar trucks that were used in the subway and some of them were pulled by tractors of about the same width as the trucks.
[4] On the day in question, which was shortly before Christmas, there was a great amount of mail and express being moved through the subway. Trucks were parked along the north and south walls of the passage so that there was only room to move a truck between them with a clearance of a few inches on either side. Some of these trucks belonged to the Terminal Railroad Association and some belonged to the Express Agency. The plaintiff started to pull his truck, which was piled high with mail, to elevator No. 28 and he was assisted by another Terminal employee who pushed from the rear. The load upon the truck prevented the man who was pushing from seeing the passageway ahead.
[5] In front of the plaintiff an empty Terminal truck was being pushed by another employee and about 4 or 5 feet in front of him was an express truck. This Express Agency truck was one of four which were *Page 608 
being pulled by an Express Agency tractor. There was a space of about 10 feet between the plaintiff and the truck directly in front of him.
[6] The line had proceeded in this order for about 120 feet and the truck which was being pulled by the plaintiff reached a point in front of elevator No. 33 where Express Agency trucks were parked on both sides of the open passage when the tractor suddenly stopped without any warning. The man pulling the truck behind those drawn by the tractor jumped aside and his truck hit the rear of those being pulled. The plaintiff could not stop his truck and was squeezed between it and the Terminal truck in front of him.
[7] The plaintiff states that the hand trucks when loaded are heavy and hard to stop and it was the custom of those driving the tractor to shout "Whoa" or "Stop" before stopping as a warning to those behind. This gave the man pulling the truck time to stop or swing to one side, but no such warning was given and there was no room to swing his truck to the side.
[8] Testifying for the Railway Express Agency, one of its investigators stated that he talked to all of the tractor operators who had been on duty on the day of the occurrence but none of them knew anything about it. He stated that he was unable to determine from his investigation who was driving the tractor involved.
[9] It is unnecessary to set out any of the medical testimony as no question is raised respecting the plaintiff's injuries or the amount of the award.
[10] This action is brought against the Terminal Railroad Association under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, and against the Railway Express Agency on common law negligence. The case was tried against the Terminal on the theory that it had failed to provide the plaintiff a safe place in which to work.
[11] There is no allegation or attempt to prove that the subway was in itself unsafe. The case was tried and submitted to the jury on the theory that the place was made unsafe by the presence of parked trucks that narrowed the passage between them so that plaintiff's truck could not be turned aside in the event a tractor or truck stopped suddenly in front of him.
[12] It is contended by the Terminal that plaintiff failed to make a submissible case against it in that it was not guilty under the safe place rule of any negligence that was the proximate cause of the injury. 45 U.S.C.A. § 51 provides that the employer shall be liable "for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."
[13] It will be noted that the act requires negligence on the part of the employer as a prerequisite to recovery. It fails to define negligence and so it is necessary to rely upon the common law in our determination of whether or not a case of negligence has been made. Dow v. Carnegie-Illinois Steel Corp., 3 Cir., 165 F.2d 777; Watkins v. Thompson, D.C., 72 F.Supp. 953; Ellis v. Union Pacific R. Co., 147 Neb. 18, 22 N.W.2d 305. We are obliged, however, to follow the decisions of the Federal courts in reaching our conclusion on any question of substantive law under the statute. Joice v. Missouri-Kansas-Texas R. Co., 354 Mo. 439, 189 S.W.2d 568, 161 A.L.R. 383; Webber v. Terminal R. Ass'n of St. Louis, 335 Mo. 11, 70 S.W.2d 863; Williams v. Terminal R. R. Ass'n of St. Louis, 339 Mo. 594, 98 S.W.2d 651.
[14] In Eckenrode v. Pennsylvania R. Co., 164 F.2d 996, 997, loc. cit. 998, the Circuit Court of Appeals of the Third Circuit stated:
[15] "There is no dispute that the foundation of recovery under the Act is negligence on the part of the defendant.[6]
[16] "[6] `In this situation the employer's liability is to be determined under the general rule which defines negligence as the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done *Page 609 
under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done.'"
[17] As to the negligent failure of a master to provide safe appliances with which to work the Missouri Supreme Court stated in Wellinger v. Terminal R. Ass'n of St. Louis, 353 Mo. 670,183 S.W.2d 908, loc. cit. 910:
[18] "It is a general principle that a master has the duty to provide a servant with reasonably safe appliances. There is a qualification of the principle, however — it is universally agreed that a master is not liable for a breach of this duty where the servant's injury was not caused by any defect in the appliance provided by the master which affected its safety when used in the ordinary manner and for the purposes for which it was intended."
[19] The same rule is applicable to the safety of the place wherein the servant is working, if we add to it the proviso that the place must not present any features which make it reasonably likely that harm will come to the servant because of the misconduct of others. Restatement of the Law of Torts, Sec. 302, comment "n"; Lillie v. Thompson, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73. Or as stated by our Supreme Court in Kelso v. W. A. Ross Const. Co., 337 Mo. 202, 85 S.W.2d 527, loc. cit. 535:
[20] "In other words, the employer's duty is not merely safety of the place of work of his employee, but also his safety in hisplace of work; in short, a safe environment as well as a safe place."
[21] It is respondent's contention that with the passage narrowed by parked trucks a situation was created whereby the Terminal Railroad Association could reasonably foresee and anticipate that a truck might stop suddenly and bring about a collision with a following truck. He relies chiefly upon the cases of Lillie v. Thompson, supra, and Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 744, 90 L.Ed. 916.
[22] In Lillie v. Thompson the plaintiff was a young woman telegraph operator whose duties were to receive and deliver messages to and from men operating trains in the yards. The defendant had reason to know that the yards were frequented by dangerous characters but plaintiff was required to work alone at night in a little frame building in an isolated part of the yards. This building was not lighted nor guarded. When crewmen desired to receive or send a message they would knock on the door for admission to the building. No window was provided so that the operator might see who she was admitting before opening the door. In response of a knock she opened the door and was criminally assaulted by an unidentified person. The Supreme Court held that the danger was foreseeable and that the defendant had a duty to make reasonable provision against it.
[23] In the case of Lavender v. Kurn, supra, the employee was struck by a projecting mail hook which would not have been in range of striking him had he not been on high and uneven ground near the train. The United States Supreme Court held that the evidence that the place was dark and the surrounding ground high and uneven was sufficient to make a submissible case.
[24] Other cases of like import are cited, but in all of them the condition complained of contributed to the cause of the injury and a situation was present whereby the danger could have been reasonably anticipated and guarded against.
[25] In deciding whether or not a case was made for the jury, in the case under consideration, we must appraise the evidence by the yardstick given us in Lavender v. Kurn, supra:
[26] "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is acomplete absence of probative facts to support the conclusionreached does a reversible error appear. But where, as here there is an evidentiary *Page 610 
basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." (Emphasis ours.)
[27] There is no evidence that the aisle was not sufficiently wide for the passage of trucks and tractors. There is no evidence that trucks were occasionally stopped without warning and there is no evidence that anything occurred or might customarily occur in the area where the collision took place which would cause tractors to stop suddenly. How then can the Terminal Railroad Association be guilty of negligence?
[28] We cannot predicate the negligence of failing to provide a safe place in which to work upon the theory that such negligence may be found to arise when the servant is injured by any cause or instrumentality, for the master is not an insurer of the servant's safety. The safety of the place must be commensurate with the work and the conditions that surround it, but it cannot be said that a passageway sufficient in all matters to afford room for the truck which plaintiff was obliged to pull is actionably unsafe because it became unsafe when a truck stopped suddenly in front of him without warning. If this were not true, then every alley or driveway permitting only room for the movement of vehicles in one direction would be an unsafe place because it would not afford space to turn aside if the lead vehicle in a line of traffic came to a sudden stop.
[29] Because of the noted failure to prove that the collision of the trucks was a foreseeable thing likely to occur "there is a complete absence of probative facts" to support a verdict and it must be held that the plaintiff failed to make a submissible case against the Terminal Railroad Association.
[30] The defendant Railway Express Agency contends that it was guilty of no negligence when its operator stopped the tractor without warning because the stop may have been necessary and that negligence can only be concluded from the evidence by conjecture and guesswork. We are cited to several cases uniformly holding that where the evidence is circumstantial and the plaintiff's injury arose from one of two or more causes, for only one of which the defendant would be liable, then no case has been made. These citations, however, are not applicable to the evidence before us for the physical cause of the injury is fully proven. The injury arose from a collision between the truck pulled by the plaintiff and the one in front of it when a tractor at the head of the line stopped suddenly without warning.
[31] In Kimberling v. Wabash R. Co., 337 Mo. 702, 85 S.W.2d 736, loc. cit. 741, our Supreme Court said:
[32] "The test of whether there is a causal connection between the alleged negligence and the injury is that the facts show that, absent the negligent act, the injury would not have occurred."
[33] Here the injury would not have occurred if the tractor had not suddenly stopped. So it appears that the causal connection between the act of stopping the tractor and the injury was fully established.
[34] It remained for the jury to determine from the evidence the question of negligence and if it could conclude that the act of stopping without warning was negligent, then both the negligence and its causal connection with the injury were sufficiently established to support a verdict against the Railway Express Agency.
[35] There was a great amount of traffic in the subway and the tractor operator knew or should have known that he was probably closely followed by hand drawn trucks. This was the usual and customary thing and because of it, it was also customary to shout a warning when a tractor was brought to a sudden stop. The uncontradicted evidence shows that the tractor was stopped without warning and since a reasonable and prudent man would *Page 611 
not have done this under the existing circumstances, there was sufficient proof of negligence. There may have been some excuse for the stop and the failure to warn, but the plaintiff's evidence need not exclude causes for which the defendant would not be liable. In other words, the plaintiff's evidence need not exclude the possibility that the sudden stop was necessary and that no warning could be given. If such was the situation it was a matter of defense. State ex rel. City of St. Charles v. Haid, 325 Mo. 107, 28 S.W.2d 97; Anderson v. Asphalt Distributing Co., Mo.Sup., 55 S.W.2d 688, 86 A.L.R. 1033; Long v. F. W. Woolworth 
Co., 232 Mo. App. 417, 109 S.W.2d 85. It follows that the court properly denied the motion on behalf of the Railway Express Agency for a directed verdict.
[36] It is also contended by the Railway Express Agency that the court erroneously gave instruction No. 2. This instruction deals with the negligence in the sudden stopping of the tractor without warning, and the objection made to it is that there is no evidence that the driver of the tractor could have warned the plaintiff or made a slower stop so as to avoid the collision. This objection relates back to the point previously discussed which has been ruled against the appellant. The instruction appears in proper form and it follows that the judgment against the Railway Express Agency should be affirmed.
[37] It is therefore recommended that the judgment be reversed as to the Terminal Railroad Association of St. Louis and affirmed as to the Railway Express Agency.