RODNEY STEVEN BIGGS, Plaintiff-Appellee, *v.* TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Defendant-Appellant.

Fifth District   No. 81—224

Opinion filed November 9, 1982.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville (Richard M. Roessler and William P. Gavin, of counsel), for appellant.

Del A. Goldenhersh, of Goldenhersh & Goldenhersh, P.C., of Belleville, for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Rodney Steven Biggs brought this action under the Federal Employers' Liability Act (45 U.S.C. sec. 51 et seq. (1976)) to recover damages for personal injuries sustained while employed as a track laborer for defendant, Terminal Railroad Association of St. Louis. Defendant appeals from the judgment entered in the circuit court of Madison County on a jury verdict in plaintiff's favor.

On appeal, defendant argues that there can be no recovery under the Federal Employers' Liability Act because plaintiff was not acting within the scope of his employment when he sustained injury and there was no evidence that defendant was negligent in hiring or retaining in its employment a vicious, ill-tempered employee.

The testimony established that plaintiff and co-employee, Robert Parr, were track laborers and had been working for defendant 15 days on April 17, 1979. On that morning, plaintiff, Parr and 10 to 12 other employees reported for work at a shanty at the railroad yards. While in the shanty, plaintiff related to the men a dream he had the night before about Parr pouring "Cheerios" in the heating and air conditioning ducts of plaintiff's trailer. Plaintiff testified that some of the men laughed but that there was no other reaction to the story. At that time, Ron Gartner, the track foreman, told the men to get their tools and get to work. Plaintiff and Parr then walked to the tool shed. Plaintiff repeated the dream in the tool shed to Gartner at which time Parr asked Gartner if he (Parr) could beat up plaintiff. Plaintiff further testified that Gartner responded by saying he wanted to get out of the shed first. Gartner testified he responded by telling Parr and plaintiff to get to work. Gartner then left the shed. Plaintiff then tes-

tified that Parr hit him on the jaw. Subsequently, plaintiff went outside and began pulling spikes at the track. When Parr came out plaintiff said, in Gartner's presence, "how come you hit me?" Parr then began grabbing at plaintiff and plaintiff reacted by striking Parr with a railroad spike he had in his hand. The spike cut Parr's lip. Parr picked up a pick axe and threatened plaintiff but threw the axe down without striking plaintiff. Plaintiff testified he turned away, believing Parr was now in control of himself. At that point, plaintiff was struck on the head with a railroad spike by Parr.

Gartner testified that he saw nothing occur between plaintiff and Parr in the tool shed and that he was turned away from plaintiff and Parr outside at the track until after Parr's lip was cut. When Parr picked up the axe, Gartner told him to drop it and get to work. When Parr did so, Gartner testified that he then turned back to his work having no reason to suspect further trouble.

Defendant's appeal from the denial of its motion for directed verdict requires us to view all of the evidence in the light most favorable to plaintiff. Only if the evidence overwhelmingly favors defendant may this court reverse the jury verdict for plaintiff. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

The FELA makes a railroad liable for injury or death resulting in whole or part from the negligence of any of its employees, officers or agents. In order to recover under the FELA, plaintiff must prove he was acting within the scope of his employment, that defendant was negligent and that the negligence contributed in whole or part to plaintiff's injury.

■ The testimony, although brief on this point, is sufficient to establish that plaintiff was acting within the scope of his employment at the time of the injury. Plaintiff was injured during working hours and he was injured while on the railroad's premises. After Parr struck plaintiff in the tool shed, plaintiff went out to the track and began pulling spikes. His injury occurred moments later. Although plaintiff did strike Parr, the jury could find that he did so only after provocation by Parr. We reject defendant's first contention that plaintiff was engaged in a fight with Parr and, therefore, was acting outside the scope of his employment.

■ The principles of law in these cases are well established. A railroad, as any employer, may be held liable under the Act where the assault by the fellow employee may be said to be within the scope of his employment, but the employee acts negligently. Liability may also be predicated upon the direct negligence of the railroad in knowingly employing, or retaining in its employ, a person with a quarrelsome

disposition and vicious propensities who might reasonably be said to be a threat to other employees while performing their jobs within the scope of their employment. (Restatement (Second) of Agency sec. 213 (1958).) These theories of liability were discussed at length in *Tatham v. Wabash R.R. Co.* (1952), 412 Ill. 568, 107 N.E.2d 735, and have been the subject of two annotations in American Law Reports (Annots., 33 A.L.R.2d 1295 (1954); 8 A.L.R.3d 442 (1966)).

Initially, we note that plaintiff makes no claim that defendant is vicariously liable under the principles of *respondeat superior*, that is, negligent because Parr acted negligently while acting within the scope of his employment. Instead, plaintiff's claim is one of direct negligence.

Plaintiff alleged three separate acts of negligence: failure to protect plaintiff from Parr, failure to provide plaintiff with a reasonably safe place to work and retention of Parr in its employ although it knew or should have known Parr was an ill-tempered and vicious person.

The reported cases establish that before the railroad may be found negligent, it must have had prior notice of the assailant employee's violent propensities. Without any notice, defendant could not be negligent by retaining Parr in its employ. And, it could not be negligent by failing to protect plaintiff or by failing to provide plaintiff with a safe place to work if it did not know of Parr's violent nature and thus could not foresee any harm to plaintiff.

Because we find defendant did not have sufficient notice, we hold that defendant was not negligent and under the rule of *Pedrick*, the judgment in plaintiff's favor must be reversed.

It was not alleged, nor was there any evidence, that defendant was negligent in employing an employee with known vicious propensities. There was no evidence that Parr had ever been quarrelsome or a person of violent disposition. The only evidence of this kind was the attack on plaintiff, and if defendant was negligent in retaining Parr in its employ, the only evidence of prior notice of Parr's vicious disposition was that brought to the attention of Gartner, the track foreman, on the morning of the incident.

A corporate defendant acts only through its officers and employees. We do not believe that this brief notice of Parr's violent manner, brought only to the attention of the track foreman, could be considered to be notice to the corporate defendant under these facts. The Restatement (Second) of Agency sec. 213, comment *d*, at 459-60 (1958), states that an employee must have some antecedent reason to believe that the employee presents an undue risk of harm to others

because of his vicious nature.

Both plaintiff and Gartner testified that Parr had not caused any previous trouble nor had Parr and plaintiff had any other conflicts. The incident on April 17 was an isolated, brief occurrence. It was uncontradicted that Gartner did not see Parr hit plaintiff in the tool shed. Thus, any notice defendant had of Parr's violent nature occurred as the events at the track took place. Although the witnesses did not give a specific timetable, the events at the track were characterized as occurring very quickly.

In addition to the briefness of the events, it was uncontradicted that Gartner did not see much of what occurred. He did not see Parr strike plaintiff in the tool shed. At the track he was turned away from plaintiff and Parr as he did his work. He did not see Parr grabbing and coming at plaintiff, nor did he see plaintiff graze Parr's lip with the spike. Not until Parr raised the axe did Gartner see any trouble, and Parr quickly dropped the axe at Gartner's request.

Although plaintiff claims Gartner did nothing to defuse the trouble between plaintiff and Parr, we are at a loss as to what Gartner could have done, bearing in mind Gartner saw very little of a very brief occurrence. The one case that has considered the question of the duty of a supervisory employee in this situation has denied that a supervisory employee has a duty to anticipate and prevent the conduct of an employee, such as Parr, in this situation. *Atlantic Coast Line R.R. Co. v. Southwell* (1927), 275 U.S. 64, 72 L. Ed. 157, 48 S. Ct. 25.

Plaintiff relies on the decision in *Harrison v. Missouri Pacific R.R. Co.* (1963), 372 U.S. 248, 9 L. Ed. 2d 711, 83 S. Ct. 690. In that case plaintiff was assaulted by a fellow employee whom he accused of stealing a ballast fork. A jury awarded damages to plaintiff but the Illinois circuit court granted the railroad's motion for judgment notwithstanding the verdict. The appellate court affirmed, holding there was insufficient evidence that the railroad knew or should have known of the assailant's violent nature prior to the assault. (*Harrison v. Missouri Pacific R.R. Co.* (1962), 35 Ill. App. 2d 66, 181 N.E.2d 737.) In a *per curiam* opinion, the United States Supreme Court found the evidence sufficient to sustain the jury verdict and reversed. The testimony established that when the assailant was assigned to plaintiff's crew, the roadmaster warned plaintiff about assailant, calling him a bad actor and a troublemaker. Plaintiff testified that he complained to the roadmaster several times about his assailant's misconduct prior to the assault. After plaintiff reported the assault, the roadmaster again said, "I told you to watch out for him." The Supreme Court noted that the testimony was contradicted but that if be-

lieved by the jury it was sufficient evidence to support the railroad's notice of assailant's violent propensities.

We find the evidence of notice in *Harrison* quite different from the facts here. In *Harrison* the railroad's notice arose because plaintiff complained about the assailant several times and because the roadmaster knew of the assailant's vicious nature. Neither of those factors were present here.

■ Finding no negligence on the part of the defendant railroad, the trial court erred in denying defendant's motions for directed verdict and judgment notwithstanding the verdict. Accordingly, the judgment of the circuit court of Madison County is reversed.

Reversed.

JONES and WELCH, JJ., concur.