Leo **STEWART**, **Plaintiff–Respondent,**

v.

**ALTON AND SOUTHERN RAILWAY COMPANY, Defendant–Appellant.**

No. 61320.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 2, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 17, 1993.

Application to Transfer Denied
April 20, 1993.

**122**

Stephen M. Schoenbeck, Schoenbeck, Schoenbeck & Associates, St. Louis, for defendant-appellant.

Joseph L. Walsh, III, Gray & Ritter, P.C., St. Louis, for plaintiff-respondent.

CRANDALL, Presiding Judge.

Defendant, Alton & Southern Railway (Railway), appeals from the judgment entered in this jury-tried, Federal Employers' Liability Act (F.E.L.A.) case awarding plaintiff, Leo Stewart (Stewart), $65,000.00 in damages for injuries caused by Railway's negligence. We affirm.

The evidence, viewed in a light most favorable to plaintiff, discloses that Stewart, a black male, worked twenty-seven years for Railway. Stewart had never been disciplined or reprimanded for his work performance during his career with Railway. The majority of that time, including the period herein at issue, Stewart was a journeyman carman, responsible for repairing Railway's boxcars. Darvin Klein (Klein), a white male, worked with Stewart throughout his career with Railway, and was Stewart's supervisor during the relevant period. The two men had been personal friends until the middle of 1987. Thereafter, Klein began a daily campaign of harassment, verbally attacking Stewart through November 1988, until Stewart was advised by a physician that he would not be able to return to work due to his then diagnosed heart condition.

Klein continually harassed Stewart, rebuking him, for example, when he complained of not feeling well. Stewart testified:

Well, he [Klein] would rush me and push me and he said, 'You have to get the cars going, you're lazy.' And I tell him, 'Well, I don't feel good, I'm hurting,'

when he start messing with me, you know, and then I would get these chest pain and I would tell him I didn't feel good, I was hurting and he said, 'Well, this ain't no place for you. If you're sick, go home, nigger.'

Stewart stated further that "[he'd] go somewhere and hide maybe and then he'd [Klein] come find me and chew me out again and sometime I go down in the storeroom and Mr. Jackson [who was in charge of the storeroom] would give me medicine for the headache."

In addition, Stewart's operation of a malfunctioning piece of equipment drew censure from Klein. Thus, "[Klein] would say something like, 'You didn't move the car right. You're stupid. You're dumb. I'm going to fire you, you know. I could get a nine year old nigger and do the job better than that....' "

Stewart attempted on numerous occasions to discuss the situation with Klein directly, seeking to resolve whatever the problem his supervisor was having with him:

I did [tell Klein] several times off and on that I didn't feel good, I said, 'I don't know what it is, but I'm hurting.' And then I would say sometime, 'Why are you picking on me? We used to be friends. We used to be real close. Why pick on me?'

And then he [Klein] said something like, 'Your boy's gone now [referring to Railway's former president and general manager, Mr. Huffman, whom Stewart had previously enjoyed a working relationship until Mr. Huffman's retirement in 1985]. You're mine.' And then he would say, 'Well, if you sick, go home, nigger, we ain't got no place for you out here.' That was a constant thing.

The situation did not improve. In fact, Stewart was also subjected to the racial denigration of his photograph that was reproduced in a calendar, portraying his position as village clerk. According to Stewart, when he saw the calendar hanging in Klein's office sometime in 1988,

my picture had been marked all over and degraded and remarks like nigger and,

you know, something like that and I asked him [Klein] who had did it and he never would tell me and then he told me to get out of there. Somebody had messed with it so I took the calendar, tore it up and threw it in the trash.

Again Stewart sought to resolve the situation with Klein. But in response to Stewart's inquiry as to the nature of the problem, Klein purportedly replied that "whenever [Stewart] stopped thinking [he] was more than [Klein], that he [Klein] would treat [Stewart] like [he] wanted to be treated."

As a result of such encounters with his supervisor, Stewart experienced chest pain, muscular aches in his shoulders, and headaches. Yet Stewart chose not to file a formal grievance against Klein, as he "didn't want to rock the boat." Rather, he endured the daily incidents and took aspirin to alleviate the chest pain. The dissipation of physical symptoms at night, while away from his job, also contributed to Stewart's decision to not pursue any recourse. Ultimately, however, Stewart saw his doctor during his Thanksgiving vacation in 1988, learning then that he had heart disease and would no longer be able to work.

Stewart brought this action against his former employer, Railway, pursuant to F.E.L.A., 45 U.S.C. § 51, which provides in pertinent part:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier ....

(emphasis added).

■ The coverage of the statute is defined in broad language, which has been construed even more broadly. *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561–562, 107 S.Ct. 1410, 1413–1414, 94 L.Ed.2d 563 (1987) (footnotes omitted). *See Ackley v. Chicago and North Western Transp. Co.*, 820 F.2d 263, 266 (8th Cir.1987). This result obtains because Congress intended the Act to be remedial, *Ackley*, 820 F.2d at 266, favoring protection of the nation's railroad workers. *Robert v. Consolidated Rail Corp.*, 832 F.2d 3, 6 (1st Cir.1987). Recovery under the Act is not limited to what may be considered more traditional railroad injuries. *See Urie v. Thompson*, 337 U.S. 163, 181–182, 69 S.Ct. 1018, 1030, 93 L.Ed. 1282 (1949).

On appeal, Railway contends the trial court erred in denying its motion for judgment notwithstanding the verdict for three reasons: (1) plaintiff failed to prove that he was subjected to unconscionable abuse; (2) plaintiff failed to prove that his injury was reasonably foreseeable; and (3) there was no credible evidence that plaintiff's chest pains were either caused or aggravated by any tortious conduct on the part of the defendant.

■ Determination of whether plaintiff met his burden in making a submissible case is governed by federal law. *Hertzler v. Burlington Northern Railroad Co.*, 720 S.W.2d 762, 766 (Mo.App.1986); *White v. St. Louis–San Francisco Ry. Co.*, 539 S.W.2d 565, 569 (Mo.App.1976). The Act is an avowed departure from the common law. *Sinkler v. Missouri Pacific Railroad Co.*, 356 U.S. 326, 329, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958). The test under F.E.L.A.

is simply *whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury ... for which damages are sought.* It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes.... Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury.... *Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence*

*allows the jury a choice of other probabilities.*

*Rogers v. Missouri Pacific Railroad Co.,* 352 U.S. 500, 506–507, 77 S.Ct. 443, 448–449, 1 L.Ed.2d 493 (1957) (emphasis added; footnotes omitted).

■ Thus, in passing on the submissibility of plaintiff's case, to the maximum extent proper, questions arising under F.E.L.A. shall be left to the jury. *Hertzler,* 720 S.W.2d at 766. Only where there is a complete absence of probative facts to support the jury's verdict does reversible error result. *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946); *Wiser v. Missouri Pacific Railroad Co.,* 301 S.W.2d 37, 44 (Mo.1957).

■ "Negligence" under the Act is a federal question, not controlled by the varying interpretations of negligence under state law applicable for other purposes. *Rogers,* 352 U.S. at 507 n. 13, 77 S.Ct. at 449 n. 13; *Urie,* 337 U.S. at 174, 69 S.Ct. at 1027. To make a submissible case, Stewart had to establish that Railway had a duty to provide him with a reasonably safe place to work, that Railway breached its duty of care, that such lack of due care played some part, however slight, in producing Stewart's injury and that the injury was reasonably foreseeable. *See Ewing v. St. Louis Southwestern Railway Co.,* 772 S.W.2d 774, 775–776 (Mo.App.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 744 (1990).

■ Railway does not contest that it owed Stewart the duty of providing him with a reasonably safe work environment. Under F.E.L.A., Railway was required to eliminate those dangers which could be removed by the exercise of reasonable care. *See Qualls v. St. Louis Southwestern Railway Co.,* 799 S.W.2d 84, 86 (Mo. banc 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1585, 113 L.Ed.2d 650 (1991). "F.E.L.A. negligence" exists, and Railway may be held liable, "if the employer knew or should have known its standard of conduct was inadequate to protect its employee from injury." *See Hertzler,* 720 S.W.2d at 766.

■ Negligence of the employer can be founded upon the acts of a fellow employee causing injury. *Green v. River Terminal Ry. Co.,* 763 F.2d 805, 808 (6th Cir. 1985); *Whitaker v. Terminal Railroad Ass'n of St. Louis,* 224 S.W.2d 606, 609 (Mo.App.1949). Here, Stewart presented evidence that he suffered symptoms of depression and cardiac artery disease or the aggravation of a pre-existing heart condition due to Railway's negligence, based upon its failure to eliminate the intentionally abusive conduct of Stewart's supervisor, Klein.

Railway seeks to avoid liability by characterizing Stewart's injury as "purely emotional," thus contending Stewart's claim is not cognizable under F.E.L.A. Alternatively, Railway argues that even if F.E.L.A. is interpreted to apply to purely emotional injuries, Stewart failed to establish that the alleged conduct rose to the level of unconscionable abuse which, it is further argued, is a prerequisite for recovery.

We need not decide whether F.E.L.A. provides relief for purely emotional injuries. Stewart's evidence established physical consequences caused by Railway's negligence in failing to stop the frequent harassment. Resulting physical harm, although accompanied by psychological symptoms, is a "personal injury" as contemplated under F.E.L.A. *See Masiello v. Metro–North Commuter Railroad,* 748 F.Supp. 199, 205 (S.D.N.Y.1990) (involving both physical contact and "a significant physical injury," i.e., an ulcer). *See also, Buell,* 480 U.S. at 570 n. 22, 107 S.Ct. at 1418 n. 22 (recognizing that a purely emotional injury is not presented where, inter alia, physical symptoms accompany severe psychological illness); *Holliday v. Consolidated Rail Corp.,* 914 F.2d 421, 425 (3rd Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991) (injury including manifestation of psychological symptoms found not to be solely emotional based upon accompanying heart palpitations, spastic colon, tenesmus, and involuntary rectal discharge). *Compare, e.g.,* the following, involving purely emotional injuries: *Netto v. Amtrak,* 863 F.2d 1210, 1214 n. 4 (5th Cir.1990); *Adams v. CSX*

*Transp., Inc.,* 899 F.2d 536, 538 n. 4 (6th Cir.1990); *Gillman v. Burlington Northern Railroad Co.,* 878 F.2d 1020, 1022–1023 (7th Cir.1989); *Stoklosa v. Consolidated Rail Corp.,* 864 F.2d 425, 426 (6th Cir.1988); *Adkins v. Seaboard System Railroad,* 821 F.2d 340, 342 (6th Cir.1987), *cert. denied,* 484 U.S. 963, 108 S.Ct. 452, 98 L.Ed.2d 392 (1987); *Amendola v. Kansas City Southern Ry. Co.,* 699 F.Supp. 1401, 1407–1409 (W.D.Mo.1988).

■ Having concluded that the injury alleged is of the type contemplated under F.E.L.A., we turn now to the question of whether there was any evidence of employer negligence which played any part in causing the injury. Specifically, our inquiry turns upon whether Railway was negligent in not preventing Klein from harassing Stewart. *See Lancaster v. Norfolk and Western Ry. Co.,* 773 F.2d 807, 820 (7th Cir.1985), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987). Thus "[Stewart] had to show that the railroad should have known that its supervisor[ ] [was] misbehaving; more concretely, that the railroad had information about [his] propensities, and failed to act on the information." *Id.*

■ Knowledge of Klein's conduct, whether actual or constructive, is a jury question. *See Urie,* 337 U.S. at 178, 69 S.Ct. at 1028–1029. Stewart's lack of knowledge of his heart disease or condition is irrelevant to the issue of Railway's negligence. *See Hamilton v. Standard Oil Co.,* 323 Mo. 531, 19 S.W.2d 679, 683 (Mo. banc 1929). Furthermore, the continuous duty to provide a reasonably safe place to work, while measured by foreseeability standards, is broader under the statute than a general duty of due care. *Ackley,* 820 F.2d at 267.

■ The record establishes that Stewart did not file any formal grievance against Klein; nor did he advise any other supervisor or management official of the harassment. Yet supervisory employees, having general powers or authority beyond that of mere "ministerial" employees, are treated as agents of a corporation. *See Iota Management v. Boulevard Invest-*

*ment Co.,* 731 S.W.2d 399, 410 (Mo.App. 1987). Accordingly, knowledge of the supervisor's conduct, by the supervisor himself, may be imputed to the railroad. *See id. Cf. Skinner v. Dawson Metal Products,* 575 S.W.2d 935, 940 (Mo.App.1978) (knowledge by supervisor of employee's compensable injury imputed to corporation). *Compare Biggs v. Terminal Railroad Ass'n of St. Louis,* 110 Ill.App.3d 709, 66 Ill.Dec. 440, 442, 442 N.E.2d 1353, 1355 (1982), *cert. denied,* 462 U.S. 1133, 103 S.Ct. 3114, 77 L.Ed.2d 1368 (1983) (employer not deemed to have knowledge of co-employee's violent propensities based on brief notice given foreman at time of assault). Here Stewart complained numerous times to Klein that he was physically hurting in response to Klein's dogged commands and beratement. Stewart also sought to resolve the problem Klein was having with him. A protest or request by the employee may be evidence of the employer's negligence. *White,* 539 S.W.2d at 569. Furthermore, the number of incidents may be deemed sufficient to establish a pattern of supervisory abuse which should have put Railway on notice. *See Lancaster,* 773 F.2d at 820. Based upon the foregoing facts, a jury was entitled to infer that reasonably careful management would or should have become aware of Klein's conduct and taken steps to stop it. Railway's first point is denied.

■ In its second point, Railway argues that Stewart failed to prove that his injury was reasonably foreseeable. The issue of foreseeability is generally a jury question. *Hertzler,* 720 S.W.2d at 766. Judicial review is limited to the reasonableness of the jury finding. *Id.* It is knowledge or anticipation of the possibility of harm to plaintiff, not of the exact nature of the injury, that is determinative. *Green,* 763 F.2d at 808; *Hamilton,* 19 S.W.2d at 686.

■ As previously stated, Stewart repeatedly complained to Klein of being in pain. In addition, Klein knew that, at least as of late 1985 or early 1986, Stewart suffered from high blood pressure. Further-

more, Klein testified that on a number of occasions Stewart stated he was not feeling well and did not think he could do a particular job.

Protestations of discomfort, rather than of harm or injury, may be sufficient to establish foreseeability. *See White*, 539 S.W.2d at 569. *Compare Moody v. Boston and Maine Corp.*, 921 F.2d 1, 3 (1st Cir. 1990) (claim for additional wages without complaint of deteriorating physical condition held insufficient to support foreseeability of harm as manifested as a heart attack); *Adams*, 899 F.2d at 540 (harm in form of emotional breakdown not foreseeable where plaintiff did not lodge any complaint against supervisor, seemed content with work situation, and verbally abusive supervisory style had not changed over the years); *Stoklosa*, 864 F.2d at 426 (plaintiff's extreme emotional reaction to demotion, involving serious depression and admission to facility for psychiatric treatment, held beyond foreseeable consequence). Railway's second point is denied.

Finally, Railway contends that Stewart failed to establish that his injury was causally connected to defendant's alleged negligent conduct. We disagree.

■ Although bare possibility is not sufficient to make a submissible case upon the issue of causation, *Brady v. Southern Ry. Co.*, 320 U.S. 476, 483, 64 S.Ct. 232, 236, 88 L.Ed. 239 (1943); *Ewing*, 772 S.W.2d at 776, the test under F.E.L.A. is a liberal one: "whether the railroad's negligence played any part, however small, in the injury which is the subject of the suit." *Fletcher v. Union Pacific Railroad Co.*, 621 F.2d 902, 909 (8th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981). Furthermore, recovery pursuant to the Act is appropriate even if the employee's injury was caused by the cumulative effect of a series of incidents or due to the employee's weakened condition. *Id.*

■ At trial Stewart introduced the deposition of his treating physician. From that testimony, the jury could reasonably infer that Stewart's injury—the heart condition or aggravation thereof, was caused

by Railway's negligence in not terminating Klein's harassment and physically demanding treatment of Stewart. *Compare Moody v. Maine Central Railroad Co.*, 823 F.2d 693, 695 (1st Cir.1987) (finding no evidence indicating alleged harassment by supervisor caused plaintiff's symptoms of angina, fatigue, and physical weakness).

In light of the foregoing, there was sufficient evidence from which the jury could find Stewart suffered a compensable injury under F.E.L.A. due to Railway's negligence. Accordingly, the judgment of the trial court is affirmed.

PUDLOWSKI, J., concurs.

GRIMM, J., dissents in separate opinion.

GRIMM, Judge.

I respectfully dissent.

As indicated in the majority opinion, a critical inquiry is "whether Railway was negligent in not preventing Klein from harassing Stewart." Majority opinion at 125. Therefore, Stewart " 'had to show that the railroad should have known that its supervisor[ ] [was] misbehaving; more concretely, that the railroad had information about [his] propensities, and failed to act on the information.' " *Id.* at 125 (quoting *Lancaster v. Norfolk and Western Ry. Co.*, 773 F.2d 807, 820 (7th Cir.1985), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987).

The majority finds the railroad had knowledge and failed to act. It does so by imputing knowledge to the railroad. The majority reasons (1) Klein was a supervisor, (2) as a supervisor, Klein was an agent of the railroad-corporation, (3) knowledge of an agent is imputed to the railroad-corporation, and (4) therefore Klein's knowledge of his own conduct as a supervisor may be imputed to the railroad. Majority Opinion at 125.

Ordinarily, a corporation is bound by the knowledge of its agents. *Trice v. Lancaster*, 270 S.W.2d 519, 524 (Mo.App.E.D. 1954). However, knowledge is not imputable to the corporation "when it concerns a fact which the agent is interested in con-

cealing from the corporation, and where the circumstances are such that it will be presumed that he will not communicate his knowledge to the corporation." *Id.*

Here, Klein would be interested in concealing his actions from the corporation. He would not want corporate management to know how he was treating Stewart. In addition, the circumstances are such that it would be unreasonable for Stewart to presume that Klein would report his actions to his superiors. As a result, Klein's knowledge of his actions is not imputable to the corporation.

The majority opinion also suggests that the number of incidents "may be deemed sufficient to establish a pattern of supervisory abuse which should have put Railway on notice." Majority opinion at 125 (citing *Lancaster*, 773 F.2d at 820). *Lancaster* is not persuasive because of several factual differences.

In *Lancaster*, the numerous incidents involved four different supervisors; here, only one supervisor, Klein, is implicated. In *Lancaster*, the incidents occurred over a long period of time, from 1975 to 1979. Here, the incidents occurred in approximately one year. Further, in *Lancaster*, some of the incidents occurred in the presence of witnesses other than Lancaster and the supervisor. Here, there were no witnesses other than Stewart and Klein.

I also observe that in *Lancaster*, all incidents took place in the locomotive shop, a single building managed by a "master mechanic." The railroad "appears to concede that if the master mechanic knew of these [four] supervisors' propensities to misbehave, the railroad is liable." *Lancaster*, 773 F.2d at 820. The *Lancaster* court concluded there "was enough evidence of a pattern of supervisory abuse to allow a rational jury to infer that a reasonably careful railroad management, represented in the locomotive shop by the master mechanic, would have gotten wind of it and done something to stop it."

Here, I am unable to discern from the record where all the incidents occurred. The evidence establishes supervisory abuse only by Klein. Unlike *Lancaster*, no pat-

tern of supervisory abuse by numerous supervisors was shown. Stewart admits he did not "advise any other supervisor or management official of the harassment." Majority opinion at 125. It would be unreasonable to allow a jury to infer that a reasonably careful railroad management would learn of Klein's actions from Klein.

The judgment of the trial court should be reversed.