**Grant MORGAN, Respondent,**

v.

**UNION PACIFIC RAILROAD COMPANY, Appellant.**

No. 73086.

Missouri Court of Appeals, Eastern District, Division Five.

Oct. 13, 1998.

David A. Stratmann, James W. Erwin, St. Louis, for appellant.

Leonard P. Cervantes, St. Louis, for respondent.

ROBERT G. DOWD, Jr., Chief Judge.

Union Pacific Railroad Company (Railroad) appeals from the judgment of the trial court, entered pursuant to a jury verdict, in favor of Grant Morgan (Morgan) in an action under the Federal Employer's Liability Act (FELA), 45 U.S.C. Section 51 *et seq.* Morgan brought suit against Railroad alleging that Railroad's negligence caused injuries to

his hands and wrists in the form of carpal tunnel syndrome while working for the Railroad. The jury found Railroad negligent and awarded Morgan $200,000. Railroad contends on appeal that the trial court erred when it: (1) submitted the case to the jury because there was no evidence that Morgan's injury was reasonably foreseeable; and (2) gave an instruction without requiring the jury to determine if the Railroad knew or should have known that the conditions under which Morgan worked and the tools he used were not reasonably safe. We reverse and remand for a new trial.

We present the facts in the light most favorable to the verdict. Morgan works for the Railroad in North Little Rock, Arkansas. He has worked for the Railroad since 1960, and in his current position since 1991. His job from 1991 to 1994 was to remove and install flex plates on diesel locomotive generators. Morgan would remove the nuts off six 2¾ inch bolts. To remove the nut, Morgan had to hold the bolt with one hand and knock the nut loose with a pneumatic spline drive tool weighing 60 to 70 pounds. Rust and other buildup sometimes made the removal difficult. Once the nut is loosened, Morgan used both hands to hold the tool while the nut is removed the rest of the way. After the nuts and bolts are removed, Morgan inspected and cleaned the flex plates. Then, Morgan would put the flex plate assembly back together. The nuts and bolts must be torqued at 1,800 foot pounds on re-assembly to insure that the bolts do not become loose during the operation of the locomotive. In order to perform all of these tasks, Morgan used tools driven by compressed air, including a pneumatic impact wrench, a pneumatic buffer and a router repair tool, used to drill broken bolts. These tools vibrate and must be held in awkward hand positions. This work involves repetitive hand motions.

In 1993, Morgan noticed a tingling in his hands and experienced a loss of strength in his grip. Morgan testified that he reported these hand sensations to his immediate foreman. On March 3, 1994, Morgan saw Dr. Hanaway, a neurologist in the St. Louis area, about his hands. Morgan underwent several tests including a nerve conduction test. Dr. Hanaway diagnosed Morgan as having bilateral carpal tunnel syndrome. Later, in 1994, Morgan transferred to a less strenuous job in the turbo shop.

At trial, each side presented expert medical witnesses to testify about the nature of carpal tunnel syndrome. Dr. Hanaway testified on Morgan's behalf. Dr. Hanaway testified that, based upon the medical history Morgan gave, the evidence that Morgan worked up to six hours per day, his symptoms came on over a period of a year, and that the vibration and repetitive machine handling of the type Morgan was engaged in was a common cause of carpal tunnel syndrome. Dr. Hanaway also testified that repetitive wrist action, maintaining awkward wrist position, and the use of vibrating tools were associated with carpal tunnel syndrome. It was Dr. Hanaway's belief that Morgan's work caused his carpal tunnel syndrome. Railroad's expert witness, Dr. Moore, testified that the relationship between work activities and carpal tunnel syndrome has not been definitively established. Dr. Moore testified that vibration is not an independent risk factor for carpal tunnel syndrome. He further stated no one knows how much exposure to vibration and repetition is safe or what combination of force, repetition, awkward hand positions, and vibration is unsafe.

Following the close of all the evidence, the jury returned a verdict in favor of Morgan and against Railroad in the amount of $200,-000. Railroad's motion for judgment notwithstanding the verdict and, in the alternative, a new trial and its motion for remittitur were denied and this appeal ensued.

Because the two points on appeal are interrelated, we will address them together.

■ In Point I, Railroad contends the trial court erred in submitting the case to the jury because there was no evidence that Morgan's injury was reasonably foreseeable. Railroad maintains there is no effective, reliable method of measuring or predicting what level of exposure to vibration, force, awkward hand position, and repetitive hand movements is unsafe. In Point II, Railroad contends the trial court erred by submitting a jury instruction patterned after MAI 24.01, without directing the jury to determine if Railroad

knew or should have known that the conditions under which Morgan worked and the tools he used were not reasonably safe. Railroad maintains that the Notes on Use following MAI 24.01 require the addition of such language under the circumstances presented.

 In determining whether plaintiff made a submissible case, an appellate court views the evidence in the light most favorable to the jury verdict and the prevailing party is afforded the benefit of all reasonable inferences that may be drawn from the evidence. *Euton v. Norfolk & Western Ry. Co.*, 936 S.W.2d 146, 149 (Mo.App. E.D.1996). Under FELA, to make a submissible case, a plaintiff must show the railroad had a duty to provide a reasonably safe work place, that lack of care played some part, however slight, in producing the injury, and that the injury was reasonably foreseeable. *Sanders v. National R.R. Passenger Corp.*, 930 S.W.2d 36, 38 (Mo.App. E.D.1996); *Hertzler v. Burlington Northern R. Co.*, 720 S.W.2d 762, 766 (Mo.App. E.D.1986). "In FELA suits, 'Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury.'" *Euton*, 936 S.W.2d at 150 (quoting *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 510, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)).

 Foreseeability is a necessary element of a FELA action. *Euton*, 936 S.W.2d at 151. It is the knowledge or anticipation of the possibility of harm to the plaintiff, not the exact nature of the injury that is determinative. *Sanders*, 930 S.W.2d at 38. To satisfy the foreseeability element, an employee must show that the employer had actual or constructive notice of the defective condition that caused his injury. *Euton*, 936 S.W.2d at 151. "In order to demonstrate foreseeability, the employee must show

> that (1) an officer, employee or agent of the railroad was responsible, through negligence, for the presence of the unsafe condition; or (2) at least one of such persons had actual knowledge of its presence before the accident; or (3) the unsafe con-

> dition had continued for a sufficient length of time to justify the inference that failure to know about it and remove it was due to want of proper care."

*Id.* Foreseeability is a jury question. *Euton*, 936 S.W.2d at 151; *Stewart v. Alton and Southern Ry. Co.*, 849 S.W.2d 119, 125 (Mo. App. E.D.1993). Judicial review, then, is limited to the reasonableness of the jury finding on foreseeability. *Id.*

Morgan presented sufficient evidence regarding the issue of foreseeability of his injury, and the trial court was correct in submitting Morgan's case to the jury. Morgan worked with vibrating tools and used repetitive wrist motions. Morgan presented evidence that he had in fact complained to his supervisor about pain in his hands. Morgan also presented expert medical testimony on the carpal tunnel syndrome and how it related to his work conditions. There was sufficient evidence so as to create a jury question.

 However, even though Morgan presented sufficient evidence of foreseeability, this will not preclude the necessity of submitting the issue of knowledge to the jury. We find that the trial court erred in giving Instruction No. 7 without using the MAI modifier on the issue of knowledge.

After all the testimony and evidence was before the jury, the court submitted the following verdict directing instruction based on MAI 24.01:

### INSTRUCTION NO. 7

Your verdict must be for plaintiff if you believe:

First, defendant either failed to provide: reasonably safe conditions for work, or reasonably safe appliances, and

Second, defendant in any one or more of the respects submitted in Paragraph First was negligent, and

Third, such negligence resulted in whole or in part in injury to plaintiff.

The verdict director the trial court rejected provided:

Your verdict must be for Plaintiff if you believe:

First, conditions for Plaintiff's work as a machinist were not reasonably safe, and Defendant knew or by using ordinary care could have known that such conditions were not reasonably safe, and

Second, with respect to such conditions for work, Defendant failed to provide reasonably safe methods for work, and

Third, Defendant, in any one or more of the following respects submitted in paragraph Second, was negligent, and

Fourth, such negligence resulted in whole or in part in injury to Plaintiff.

Railroad specifically objected to the form of the submission both during the instruction conference and in its motion for new trial.

■ In a FELA case where a plaintiff claims a defendant failed to provide a reasonably safe place to work, the defendant's knowledge of the unsafe condition is an essential element. *Qualls v. St. Louis S.W. Ry.*, 799 S.W.2d 84, 87 (Mo. banc 1990), *cert. denied*, 499 U.S. 961, 111 S.Ct. 1585, 113 L.Ed.2d 650 (1991); *Henry v. Union Pac. Sys.*, 875 S.W.2d 212, 215 (Mo.App. E.D. 1994). This requirement is reflected in the Missouri Approved Jury Instructions. The Notes on Use under MAI 24.01 provide in relevant part:

In the event plaintiff submits some act of negligence, constructive knowledge of which is not chargeable to the railroad, there shall be submitted in addition a paragraph providing "Second, conditions for work were not reasonably safe and defendant knew or by using ordinary care could have known of such conditions and that they were not reasonably safe, and".

In the present case, in order to leave the paragraph out, the trial court must find that the record shows, as a matter of law, that Railroad knew, or should have known, that the work conditions were not reasonably safe. Where there is an issue of fact as to defendant's actual or constructive knowledge, "the issue must be submitted to the jury by modifying MAI 24.01 in the manner set out in the Notes on Use to MAI 24.01." *Henry*, 875 S.W.2d at 214.

The inquiry here has two steps: (1) whether Railroad had knowledge of the conditions; and (2) whether Railroad knew, or could have known, that the conditions were not reasonably safe. MAI 24.01, Notes on Use. The record contains sufficient evidence from which the jury could have found Railroad had knowledge of Morgan's work conditions. Railroad agreed as to the conditions of Morgan's job and the tools he used to perform that job. More importantly, however, there was also sufficient evidence from which the jury could have found Railroad lacked knowledge that the conditions were not reasonably safe.

In this case, there was ample evidence produced at trial showing that the issues of foreseeability and Railroad's knowledge of the unsafe conditions were sufficiently disputed. Morgan testified that he had told his supervisor about the pain in his hands one year before he developed carpal tunnel syndrome and that his complaint gave the Railroad actual knowledge. However, Morgan's supervisor disputed this testimony, testifying that Morgan had never informed him of the pain in his hands.

Furthermore, disagreement existed in the expert testimony regarding the extent Morgan's work was unsafe. Both parties' experts agreed that there is no generally accepted way of measuring or quantifying an employee's exposure to repetitive hand movement, stress to the wrists or vibration. The experts could not point to any scientific or medical literature to support the claim that these variables are the risk factors for developing carpal tunnel syndrome. The parties' experts agreed there is no known way to predict whether occupational activities such as those engaged in by Morgan exposed him to unsafe levels of repetitive movements, stress on the wrist or vibration. The parties' experts also agreed there is no effective, reliable way to test for or to predict who will develop carpal tunnel syndrome from a particular activity and who will not. Although Morgan's expert testified that the repetition, hand positions, stress on the wrists and use of the vibrating tools caused Morgan's carpal tunnel syndrome, Dr. Hanaway could not point to any scientific or medical data to back his opinion. Railroad's expert testified that even those studies showing an "association"

between the use of vibrating tools and carpal tunnel syndrome lack a cause-effect relationship. Given the lack of knowledge as to what causes carpal tunnel syndrome, the inability of medical science to determine what activities cause or which persons may get the condition, and the disputed testimony of Morgan complaining to his foreman about tingling in his hands, there was an issue of fact as to whether the railroad had actual or constructive knowledge that the conditions of Morgan's work or the tools he used were unsafe. Therefore, this issue should have been submitted to the jury.

Morgan also argues that he filled out an injury report form and this injury report provided Railroad with actual knowledge. Yet this injury report was prepared nine months after the lawsuit was filed and merely recited what Morgan told the supervisor. Morgan testified that he told the supervisor about the injury and the supervisor actually filled out the report for Morgan. Since the injury report was prepared nine months after the lawsuit was filed, this is insufficient evidence to impute actual knowledge to Railroad concerning any unsafe conditions or tools at the time of Morgan's injury.

Further, the potential causes of carpal tunnel syndrome are not a matter of common knowledge. *See, Turner v. Norfolk & Western Ry. Co.*, 785 S.W.2d 569, 572 (Mo.App. W.D.1990). In *Turner*, the plaintiff suffered noise-induced hearing loss which plaintiff argued resulted from working in a noisy roundhouse. *Id.* at 570. The court held that since the noise level which may produce hearing loss is not a matter of common knowledge, plaintiff had the burden of proving that in the exercise of due care the railroad should have known that the noise level in the roundhouse could cause hearing loss to employees working there. *Id.* at 571. The court in *Turner* stated, "Obviously some conditions which cause injury will be so apparent that it can only be said that the railroad knew or should have known of the condition. But there will be conditions of work which cannot be said to be so apparent as to impart notice to the railroad." *Id.; Ming v. Norfolk & Western Ry. Co.*, 947 S.W.2d 480, 483 (Mo. App. E.D.1997). The court found that the central question is whether "the cause of the injury can be said to be commonly known as one that may cause the injury shown." *Turner*, 785 S.W.2d at 572 (citing *Evinger v. Thompson*, 364 Mo. 658, 265 S.W.2d 726, 731 (1954)). Since plaintiff failed to prove the level or duration of noise which may cause injury, the court found that it was necessary to include the additional paragraph on knowledge in the instruction. *Id.* at 572.

Likewise, in the instant case, the level or duration of vibration and repetition which may cause carpal tunnel syndrome is not commonly known. Although Morgan presented evidence of an association between vibration and repetitious hand movements with carpal tunnel syndrome, there was still an issue of fact as to Railroad's knowledge. Therefore, it was necessary to include the additional paragraph concerning Railroad knowledge in the verdict director.

We find the evidence concerning foreseeability and Railroad's knowledge in this case was sufficiently disputed to create an issue of fact which should have been submitted to the jury. The trial court erred in failing to modify MAI 24.01 in accordance with the Notes on Use. The trial court's instructional error is sufficient to warrant a new trial.

The judgment is reversed and the case is remanded for a new trial.

KAROHL, J., and CHARLES B. BLACKMAR, Senior Judge, concur.